# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL RUBIN, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> DIMENSION THERAPEUTICS, INC., ANNALISA JENKINS, ALAN B. COLOWICK, MICHAEL DYBBS, GEORGES GEMAYEL, JOHN A. HOHNEKER, GEORGE V. MIGAUSKY, and ARLENE M. MORRIS, <br><br> Defendants. | Civil Action No. 1:17-cv-11992 <br><br> **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Michael Rubin ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is a class action brought on behalf of the public stockholders of Dimension Therapeutics, Inc. ("Dimension" or the "Company") against Dimension and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9") and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Dimension will be acquired by Ultragenyx

Pharmaceutical Inc. ("Ultragenyx") through its direct wholly-owned subsidiary Mystic River Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2. On October 3, 2017, Dimension and Ultragenyx issued a joint press release announcing that they had entered into an Agreement and Plan of Merger (the "Merger Agreement")[1] to sell Dimension to Ultragenyx. Under the terms of the Merger Agreement, Ultragenyx will acquire all outstanding shares of Dimension for $6.00 in cash per share of Dimension's common stock (the "Offer Price"). Pursuant to the Merger Agreement, Ultragenyx, through Merger Sub, commenced the Tender Offer on October 2, 2017 (the "Tender Offer"). The Tender Offer is scheduled to expire one minute after 11:59 P.M. Eastern Time on November 6, 2017. The Proposed Transaction is valued at approximately $151 million.

3. On October 10, 2017, Dimension filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that Dimension stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Dimension management's projections, utilized by the Company's financial advisor, MTS Securities LLC ("MTS Securities"), in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by MTS Securities. The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Dimension stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

---

[1] On October 2, 2017, prior to entering into the Merger Agreement with Ultragenyx, the Company terminated an agreement and plan of merger, dated as of August 24, 2017, with REGENXBIO Inc.

2

4. In short, the Proposed Transaction will unlawfully divest Dimension's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Dimension is incorporated in Delaware and is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Dimension.

9. Defendant Dimension is a Delaware corporation with its principal executive offices located at 840 Memorial Drive, Cambridge, MA 02139. Dimension's common stock is traded on the NASDAQ under the ticker symbol "DMTX."

10. Defendant Annalisa Jenkins ("Jenkins") has been President, Chief Executive Officer ("CEO") and a director of the Company since September 2014.

11. Defendant Alan B. Colowick ("Colowick") has been a director of the Company since August 2015.

12. Defendant Michael Dybbs ("Dybbs") has been a director of the Company since April 2015.

13. Defendant Georges Gemayel ("Gemayel") has been a director of the Company since August 2015.

14. Defendant John A. Hohneker ("Hohneker") has been a director of the Company since January 2017.

15. Defendant George V. Migausky ("Migausky") has been a director of the Company since June 2015.

16. Defendant Arlene M. Morris ("Morris") has been a director of the Company since June 2015.

17. Defendants Jenkins, Colowick, Dybbs, Gemayel, Hohneker, Migausky and Morris are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18. Ultragenyx is a Delaware corporation with its principal executive offices located at 60 Leveroni Court, Novato, California 94949. Ultragenyx is a clinical-stage biopharmaceutical

4

company bringing to market products for the treatment of rare and ultra-rare diseases, with a focus on debilitating genetic diseases.

19. Merger Sub is a Delaware corporation and a direct wholly-owned subsidiary of Ultragenyx.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Dimension common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21. Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

22. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of October 2, 2017, there were approximately 25,205,395 shares of Company common stock issued and outstanding. All members of the Class may be identified from records maintained by Dimension or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

23. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

    (a)    Whether defendants have violated Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder;

    (b)    Whether the Individual Defendants have violated Section 14(e) of the Exchange Act;

5

(c) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(d) Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

24. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

25. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

26. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Company Background

27. Founded in 2013, Dimension is a gene therapy platform company that focuses on discovering and developing therapeutic products for people living with rare and metabolic diseases associated with the liver.

28. Dimension has a broad pipeline, which features programs addressing unmet needs for patients suffering from inherited metabolic diseases. The Company's pipeline of programs includes DTX201, a FVIII gene therapy program for the treatment of hemophilia A; DTX301, a gene therapy product candidate for the treatment of ornithine transcarbamylase deficiency; DTX401, a gene therapy program for the treatment of glycogen storage disease type Ia; DTX501, a gene therapy program for the treatment of patients with phenylketonuria; DTX701, a gene

6

therapy program for the treatment of Wilson disease; and DTX601, a gene therapy program for the treatment of citrullinemia type I.

29. On August 8, 2017 the Company reported second quarter 2017 financial results and provided a corporate update. In the press release, defendant Jenkins stated:

> Following our recently completed strategic review, we are focused on delivering key clinical milestones later this year and early in 2018 for multiple programs that have the potential to benefit people living with devastating rare and metabolic diseases associated with the liver . . . . We remain excited about our broad and unique IMD portfolio based on the AAV8 platform, and look forward to initial data later this year with DTX301 in OTC deficiency.

The press release further highlighted the Company's goals for the next year including, continuing to advance Dimension's inherited metabolic disease programs and anticipating an investigational new drug ("IND") filing in early 2018 in collaboration with Bayer, relating to the Company's hemophilia A program.

**The Proposed Transaction**

30. On October 3, 2017, Dimension and Ultragenyx issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> OVATO, Calif., and CAMBRIDGE, Mass., October 3, 2017 – Ultragenyx Pharmaceutical Inc. (NASDAQ: RARE) ("Ultragenyx" or the "Company"), a biopharmaceutical company focused on the development of novel products for rare and ultra-rare diseases, and Dimension Therapeutics, Inc. (NASDAQ: DMTX) ("Dimension") today announced that they have entered into a definitive merger agreement under which Ultragenyx will acquire all of the outstanding shares of common stock of Dimension for $6.00 per share, or approximately $151 million in cash, based on currently outstanding shares. The transaction is structured as a tender offer and will be funded through Ultragenyx's existing cash resources.
>
> The definitive agreement between Ultragenyx and Dimension has been approved by the Boards of Directors of both companies, and follows the termination of the merger agreement between Dimension Therapeutics and REGENXBIO Inc. (NASDAQ:RGNX) ("REGENXBIO"), previously announced on August 25, 2017. Following discussions with both Ultragenyx and REGENXBIO, the Board of Directors of Dimension determined that the Ultragenyx transaction represented a superior proposal. Ultragenyx will pay REGENXBIO a termination fee pursuant to

7

the REGENXBIO merger agreement, on behalf of Dimension.

The transaction is a compelling opportunity to create value as it combines Dimension's innovative portfolio of assets and its advanced gene therapy platform with Ultragenyx's late-stage clinical, regulatory, and commercial expertise in the rare disease space. Ultragenyx plans to maintain a gene therapy research and development unit, and a manufacturing team at Dimension's facilities in Massachusetts in order to retain the team's significant gene therapy knowledge and to efficiently progress critical manufacturing development.

Emil D. Kakkis, M.D., Ph.D., Chief Executive Officer and President of Ultragenyx said, "The acquisition of Dimension provides a unique opportunity to approach treatment of more rare diseases and advance our development as a next-generation rare disease company. Specifically, we look forward to leveraging our development and commercial skills in combination with Dimension's gene therapy technology, programs and people to accelerate the process of expanding treatment options and bringing important new therapies to market for patients."

"We are pleased to reach this agreement with Ultragenyx, which provides a substantial premium and immediate, certain value to Dimension stockholders," said Dimension Chief Executive Officer, Dr. Annalisa Jenkins, M.B.B.S., F.R.C.P. "I am thankful for the hard work and dedication of our talented employees, and am confident they will continue to make valuable contributions as part of a larger organization. I look forward to working closely with Ultragenyx to seamlessly bring our companies together to realize the power of this compelling combination."

**Insiders' Interests in the Proposed Transaction**

31. Ultragenyx and Dimension insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Dimension.

32. Company insiders stand to reap a substantial financial windfall for securing the deal with Ultragenyx. In the event Ultragenyx terminates the employment of a Dimension executive officer, each Company stock option and restricted stock held by that executive officer will automatically vest and the stock options will become fully exercisable. The following table sets forth the aggregate amount of stock options each executive officer stands to receive:

8

| Executive Officers | Vested Company stock options | | | Unvested Company stock options | | | Total Equity Award Consideration ($) |
|---|---|---|---|---|---|---|---|
| | Shares Underlying Vested Company Stock Options (#) | Weighted Average Exercise Price ($) | Aggregate Vested Company stock option Payment ($)(1) | Shares Underlying Unvested Company Stock Options Accelerating in Connection with Terminating Event (#)(2) | Weighted Average Exercise Price ($) | Aggregate Unvested Company Stock Option Payment ($)(1) | |
| Annalisa Jenkins, M.B.B.S., F.R.C.P. | 686,913 | $ 1.96 | $ 2,775,129 | 553,271 | $ 2.09 | $ 2,163,290 | $ 4,938,418 |
| Mary T. Thistle | 166,194 | $ 3.47 | $ 420,471 | 119,436 | $ 2.93 | $ 366,669 | $ 787,139 |
| Samuel C. Wadsworth, Ph.D. | 12,500 | $ 1.90 | $ 51,250 | 47,500 | $ 1.90 | $ 194,750 | $ 246,000 |
| Eric Crombez, M.D. | 152,532 | $ 1.77 | $ 645,210 | 106,156 | $ 2.12 | $ 411,885 | $ 1,057,096 |

33.     Moreover, if they are terminated in connection with the Proposed Transaction, Dimension's named executive officers are set to receive substantial cash payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Other ($)(4) | Total ($) |
|---|---|---|---|---|---|
| Annalisa Jenkins, M.B.B.S., F.R.C.P. | $ 1,008,130 | $ 2,163,1163 | $ 28,000 | $ — | $ 3,199,293 |
| Mary T. Thistle | $ 505,430 | $ 366,275 | $ 28,000 | $ 28,155 | $ 927,861 |
| Eric Crombez, M.D. | $ 479,612 | $ 412,191 | $ 17,200 | $ — | $ 909,003 |

**The Recommendation Statement Contains Numerous Material Misstatements or Omissions**

34.     On October 3, 2017, defendants filed the materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Dimension's stockholders. The Recommendation Statement fails to disclose material information stockholders need in order to make a fully informed decision with respect to tendering their shares, including, as discussed below, material information concerning: (i) Dimension management's projections, utilized by the Company's financial advisor, MTS Securities, in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by MTS

9

Securities.

*Material Omissions Concerning Dimension's Financial Projections*

35. The Recommendation Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

36. The Recommendation Statement fails to disclose material information relating to the Company's projections prepared by Dimension's management and relied upon by MTS Securities for its analyses.

37. The Recommendation Statement provides projections for non-GAAP (generally accepted accounting principles) metrics, including, among others, EBIT and unlevered free cash flow, but fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures. The Recommendation Statement provides two sets of projections: a Base Case and a Downside Case, yet fails to provide a non-GAAP reconciliation for each set of projections, both of which include non-GAAP financial measures.

38. When a company discloses non-GAAP financial measures in a Recommendation Statement, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method), of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

39. At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate EBIT (*i.e.*, earnings, interest and taxes) and unlevered free cash flow (*i.e.*, depreciation and amortization expenses, change in net working capital, and

10

capital expenditures). Such projections are necessary to make the non-GAAP EBIT and unlevered free cash flow figures included in the Recommendation Statement not misleading.

40. Further, the Recommendation Statement provides, "[o]n September 23, 2017, the Company provided to Ultragenyx certain assumptions underlying the Projections." Recommendation Statement at 42. However, the Recommendation Statement fails to disclose any details of the assumptions underlying the projections that the Company provided to Ultragenyx.

41. The omission of this material information renders the Recommendation Statement false and misleading, including, *inter alia*, the "Certain Prospective Financial Information" section of the Recommendation Statement.

*Material Omissions Concerning MTS Securities' Financial Analyses*

42. The Recommendation statement describes MTS Securities' fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of MTS Securities' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Dimension's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on MTS Securities' fairness opinion in determining whether to tender their shares in connection with the Tender Offer or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Dimension's stockholders.

43. With respect to MTS Securities' *Discounted Cash Flow Analysis*, the Recommendation Statement sets forth:

> A discounted cash flow analysis is a valuation methodology that calculates a company's value as the net present value of that company's projected future cash flows by discounting those cash flows back to today at that company's cost of capital. MTS Securities performed a discounted cash flow analysis on the Company

11

> using a range of discount rates of 16.0% to 18.0% and assuming no terminal values as the Projections did not contemplate funding research and development beyond the current pipeline.

Recommendation Statement at 38. However, the Recommendation Statement must clarify whether the 16.0% to 18.0% discount rate range was applied to the Company's unlevered free cash flows provided by Company management in either the Base Case or the Downside Case and, if not, disclose the projection metric used in the analysis. The Recommendation Statement further fails to disclose: (i) the sources of the quantification of the probability of success adjustments of 10.0% to 25.0% to the probability of Phase I/II success of DTX301, assigned by management and used in the analysis; and (ii) the Company's current capitalization as provided by Company management for each of the Base Case and the Downside Case.

44. With respect to the *Publicly Traded Comparable Companies Analysis*, the Recommendation Statement fails to disclose how the illustrative per Share equity value range was arrived at, as well as the net debt of the Company provided by the Company's management and utilized in the analysis.

45. With respect to the *Selected Acquisitions Analysis*, the Recommendation Statement similarly fails to disclose the Company's net debt as of September 29, 2017 utilized in the analysis.

46. The omission of this material information renders the Recommendation Statement false and misleading, including, *inter alia*, the "Summary of Financial Analyses" section of the Recommendation Statement.

47. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement. Absent disclosure of the foregoing material information prior to the

expiration of the Tender Offer, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to tender their shares in connection with the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Class Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9

48. Plaintiff repeats all previous allegations as if set forth in full.

49. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Dimension stockholders to tender their shares in the Tender Offer.

50. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

51. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

52. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

53. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision whether to tender their shares if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Class Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

54. Plaintiff repeats all previous allegations as if set forth in full.

55. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

56. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer.

57. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

## COUNT III

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

58. Plaintiff repeats all previous allegations as if set forth in full.

59. The Individual Defendants acted as controlling persons of Dimension within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Dimension and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

62. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues

and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

63. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Dimension, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 15, 2017

/s/ Mitchell J. Matorin
Mitchell J. Matorin (BBO# 649304)
MATORIN LAW OFFICE, LLC
18 Grove Street, Suite 5
Wellesley, Massachusetts 02482
(781) 453-0100

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*